UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ENNIS LEE BROWN,

                    Plaintiff,

          v.                                    Case No. 17-cv-462-pp

NICHOLAS JOHNSON, *et al.*,

                    Defendants.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANT RODNEY YOUNG (DKT. NO. 39), DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO YOUNG (DKT. NO 41), GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 51) AND DISMISSING CASE.**

---

The plaintiff, representing himself, filed this lawsuit under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. Dkt. No. 1. On October 26, 2017, the court issued a screening order, allowing the plaintiff to proceed on a claim that defendant Detective Nicholas Johnson violated his Fourth Amendment rights by arresting the plaintiff without a warrant or probable cause, and a claim that defendants Detectives Rodney Young and Kevin Armbruster violated the plaintiff's Fourth Amendment rights by interrogating him and by continuing to confine him without a judicial determination of probable cause. Dkt. No. 8.

Defendant Young has not answered the complaint, and on October 15, 2019, the plaintiff moved for a default judgment against him. Dkt. No. 39. On December 27, 2018, the plaintiff moved for summary judgment. Dkt. No. 41. On

April 22, 2019, the defendants Johnson and Armbruster moved for summary judgment. Dkt. No. 51. The court will deny the plaintiff's motion for default judgment, deny his motion for summary judgment and grant the defendants' motion for summary judgment.

## I.    FACTS

The defendants assert that on July 26, 2012, the Milwaukee Police Department dispatched Johnson and his partner (not a defendant) to a house at 2763 N. 6th Street in Milwaukee "to check for a wanted subject by the name of Ennis Brown . . . ." Dkt. No. 53 at ¶6. They indicate that before Johnson and his partner approached the house, Johnson ran a "wanted check" for the plaintiff. Id. at ¶7. They say that Johnson used the computer in the squad car to find out if the plaintiff had any active warrants, felony wants, probation or parole holds or medical alerts, as well as to learn any other "pertinent information." Id. at ¶8. The plaintiff does not dispute that the "wanted check" turned up an active civil arrest warrant from Palmyra, Wisconsin, for failure to pay fines for operating a vehicle after suspension of a license. Dkt. No. 56-2; Dkt. No. 61 at ¶11.

The defendants assert that the "wanted check" also revealed that the Milwaukee Police Department had issued an active "Temporary Felony Want" for the plaintiff for first degree sexual assault. Dkt. No. 53 at ¶9; Dkt. No. 56-1. The defendants explain that a Temporary Felony Want is an "inter-department warrant where probable cause exists to arrest a subject on an active investigation for a period of 72 hours." Dkt. No. 53 at ¶9. The plaintiff disputes the existence of the "felony want." Dkt. No. 61 at ¶9.

2

The defendants state that Johnson and his partner arrived "on scene," and that they were about to knock on the door "when a black male opened it." Dkt. No. 53 at ¶12. The plaintiff disputes this, indicating that he was awakened by a knock at 2:05 a.m. Dkt. No. 61 at ¶12. The defendants contend that the plaintiff identified himself and provided his date of birth, dkt. no. 53 at ¶13; the plaintiff says he's not sure if he was asked, dkt. no. 61 at ¶13. The defendants indicate that Johnson and his partner then took the plaintiff into custody and transported him to the Police Administration Building, dkt. no. 53 at ¶¶14-15; the defendant says that only Johnson took him into custody, and only Johnson transported him downtown, dkt. no. 61 at ¶¶14-15.

The defendants say that round 8:30 the next morning (July 27, 2012), defendant Armbruster conducted a video interview of the plaintiff in the Sensitive Crimes Division, Room 646 of the Police Administration Building. Dkt. No. 53 at ¶¶16-17. The defendants indicate that the purpose of the interview was to ask the plaintiff about "multiple allegations of Sexual Assault and Physical Abuse of a Child." Id. at ¶16. The defendants assert that Armbruster read the plaintiff his rights and, according to Armbruster, the plaintiff stated that he understood his rights and waived them. Id. at ¶¶18-19. They stated that when Armbruster asked the plaintiff if he had "any problem" talking to Armbruster, the plaintiff said he did not. Id. at ¶20. The defendants say that Armbruster explained to the plaintiff the purpose of the interview, that the plaintiff denied the allegations and "explained why he believed his daughters would lie about the abuse." Id. at ¶¶21-22. According to the defendants, the plaintiff said he'd had enough, that he

wanted to leave the interview room and that he didn't want to get involved. Id. at ¶¶23-24. They say that at that point, Armbruster ended the interview. Id. at ¶25. The defendants maintain that the interview lasted a little over a half an hour. Id. at ¶27. They indicate that the plaintiff never requested an attorney. Id. at ¶26.

The defendants indicate that a little after 6:30 p.m. that same day—July 27—defendant Young conducted a recorded video interview of the plaintiff. Dkt. Id. at ¶28. They indicate that Young exchanged pleasantries with the plaintiff and read the plaintiff his rights, and that the plaintiff stated he understood and "agreed to make a statement." Id. at ¶¶29-31. The defendants state that Young explained the charges to the plaintiff, and that the plaintiff denied them. Id. at ¶¶31-32. They assert that at around 6:43 p.m, the plaintiff announced that he was "through talking." Id. at ¶33. They say, however, that Young told the plaintiff to sit down; the two talked for a bit, until the plaintiff "agreed to be civil." Id. at ¶¶34-36. The defendants say that Young continued to ask questions, but stopped at about 7:14 p.m. "after [the plaintiff's] repeated denials." Id. at ¶37. The defendants indicate that Young gave the plaintiff a cigarette (at the plaintiff's request), then left the plaintiff alone for fifteen minutes or so, returning to the interview room around 7:38 p.m. Id. at ¶¶38-41. The defendants say that upon Young's return, however, the plaintiff "reiterated his innocence," so Young ended the interview at 7:57 p.m. Id. at ¶¶42-43, 45. The defendants again state that the plaintiff never asked for a lawyer during the interview with Young. Id. at ¶44.

The defendants submitted a disc containing the video recording of Young's interview of the plaintiff. Dkt. No. 56-3. The date and time stamp indicate that

Young interviewed the plaintiff around 6:30 p.m. on July 27, 2012. The content of the video conforms to the defendants' description of events, including that Young read the plaintiff his <u>Miranda</u> warnings; that the plaintiff stated that he understood his rights; and that he never requested an attorney during the interview. <u>Id.</u>

The defendants indicate that on the same day—July 27—Johnson gave a Probable Cause Statement and Judicial Determination form to Commissioner Cedric Cornwall. <u>Id.</u> at ¶46. They state that Commissioner Cornwall reviewed the request, made a probable cause finding, set cash bail at $40,000 and signed the probable cause statement at 2:55 p.m <u>Id.</u> at ¶¶47-49.

The defendants included a copy of the probable cause form with their summary judgment materials; it shows that on July 27 at 2:55 p.m., Commissioner Cornwall found probable cause that the plaintiff had committed the first degree sexual assault for which he was arrested, and set bail at $50,000. Dkt. No. 56-4.

The plaintiff disputes all the defendants' proposed facts from their paragraph 16 (Armbruster conducting the 8:32 a.m. video interview) through their paragraph 49 (Commissioner Cornwall signing the probable cause statement). Dkt. No. 61 at p. 3. He responds that

> [t]he plaintiff was not arrested or interrogated on July 27, 2012, as the defendants would "mis-lead" this court to believe. He was in fact "interrogated on July 26, 2012", prior to any "probable cause" hearing or order of "probable cause".

Id. The plaintiff asserts that the defendants' findings of fact are "incorrect," and that the defendants offered them to get the court to grant their motion for summary judgment. Id. The plaintiff argues that the defendants' affidavits are "full of incorrect dates" and that the exhibits the defendants have provided are not the official record. He asserts that the exhibits appear to have been altered. Id.

In a supplemental statement of facts, the plaintiff denies that he saw Armbruster on July 27, 2012. Dkt. No. 63 at ¶¶16-26. The plaintiff denies that there is a video of Armbruster interrogating him on July 27, 2012. Id. at ¶27. The plaintiff denies having contact with Young on July 27, 2012. Id. at ¶¶28-40. He states that he has no knowledge of Commissioner Cornwall making a probable cause determination or setting bail. Id. at ¶¶46-49. The plaintiff's complaint alleges that the plaintiff did not have a probable cause hearing until July 31. Dkt. No. 1 at 4. The plaintiff asserts that none of the events the defendants described took place on July 27, 2012, and that there was no probable cause on July 26, 2012. Dkt. No. 63 at 3. He says that he was "without bail from July 26, 2012 through July 31, 2012." Id. He reiterates that the defendants' proposed findings of facts are "made up of misinformation to support the defendant that 'probable cause existed' when the plaintiff was arrested and interrogated." Id. The plaintiff asserts that the events the defendants describe—the warrantless entry of his home, his arrest and both interrogations—took place on July 26, 2012, a day before the date the defendants cite, which the plaintiff says shows that the events violated his Fourth Amendment rights. Id.

The Wisconsin Circuit Court Access web site contains information for <u>State</u> <u>v. Ennis Lee Brown</u>, 2012CF003796 (Milwaukee County). The first docket entry for that case indicates that a complaint was filed on July 31, 2012, and that the defendant made an initial appearance that same day before Commissioner Cornwall. The complaint charged thirty-three counts of various acts of alleged child abuse, incest, child enticement, and use of a dangerous weapon. https://wccawicourts.gov, last visited September 8, 2019.

## II. THE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT YOUNG AND THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NOS. 39, 41)

On October 30, 2017, the clerk's office transmitted to the U.S. Marshal for service on the defendants the plaintiff's complaint, the court's screening order, a waiver of service form and other documents related to service. Dkt. No. 9. Almost two months later, on December 22, 2017, the Marshal filed a process receipt and return for defendant Young. Dkt. No. 16. The receipt indicated that on November 22, 2017, the Marshal had mailed the service package to Young via Federal Express, but that as of December 21, 2017, Young had not returned the waiver of service or filed it with the court. <u>Id.</u> at 1. A few days later, the clerk's office notified the court that while defendant Armbruster would be filing a waiver of service, defendant counsel could not accept service for Young because he was retired. The next day, on December 28, 2017, the clerk's office issued a summons to Young.

On February 2, 2018, the Marshal filed another process receipt and return for Young. Dkt. No. 27. It indicated that the summons and service packet had

been forwarded to the Marshal on January 22, 2018. <u>Id.</u> It further stated that on January 23, 2018 at 4:45 p.m., the Marshal had received a call from Young stating "[g]ood luck trying to serve me" before hanging up. <u>Id.</u> The receipt further stated, "25 January—fwd to E/AR to attempt." <u>Id.</u> Finally, the receipt showed that the marshal had served Young at 10:15 a.m. on January 30, 2018. <u>Id.</u>

In an order issued on August 28, 2018, the court noted that the Marshal had served Young on January 30, 2018. Dkt. No. 34 at 11. Young's response was due twenty-one days after that—by February 20, 2018, but Young had not answered or appeared. <u>Id.</u> The court ordered the plaintiff to notify the court how he wanted to proceed regarding Young. <u>Id.</u>

In October 2018, in response to the court's directive, the plaintiff filed a one-paragraph motion for default judgment as to Young. Dkt. No. 39. The motion asserted that Young had failed to file an answer to the complaint. <u>Id.</u> Because Young had not answered the complaint, the clerk's office entered default as to Young the next day.[1] The defendants did not respond to this motion, likely because Johnson and Armbruster had no stake in the motion and Young had not answered.

_____

[1] Normally, the party seeking default files a motion, asking the clerk to enter default. The plaintiff didn't specifically ask the clerk to enter default, but he is not a lawyer and is representing himself. The clerk easily could confirm that Young had not answered by reviewing the docket. It was appropriate for the clerk to enter default even though the plaintiff hadn't specifically asked for it.

A little over two months later (again, well in advance of the then-scheduled February 22, 2019 summary judgment deadline), the plaintiff filed a document captioned "Motion for Summary Judgement Against the Defendant—Rodney Young—." Dkt. No. 41. While the caption of the motion refers to summary judgment, and the first paragraph of the motion references Federal Rule of Civil Procedure 56 (the summary judgment rule), the entire motion discusses Young's failure to answer the compliant, despite the U.S. Marshal having served the complaint on the plaintiff's behalf, and despite the deadline for filing an answer having passed. Id. at 1-2. The plaintiff alleges that there can be no genuine dispute as to any material fact regarding Young, because Young chose not to answer the complaint. Id. Again, the defendants did not respond, because neither Johnson nor Armbruster have a stake in the motion and Young has not answered.[2]

There is no question that Young failed to file an answer to the complaint. The history of the marshal's attempts to serve him supports a conclusion that Young deliberately refused to answer. Fed. R. Civ. P. 55 provides a two-step process for a plaintiff to obtain default judgment when a defendant hasn't answered. VLM Food Trading Intern., Inc. v. Ill. Trading Co., 811 F.3d 247, 255 (7th Cir. 2016). Rule 55(a) says that if a defendant fails to plead or otherwise

_____

[2] It does not appear that the plaintiff served Young with either the motion for default judgment or the motion for summary judgment, but because Young has not answered, the plaintiff has no way of knowing Young's address.

9

defend, and "that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Once the clerk has entered default, Rule 55(b)(2) requires a party to apply for default judgment against the party who failed to answer. Once it has been established that the defendant defaulted (didn't answer), "the well-pleaded allegations of a complaint relating to liability are taken as true." <u>VLM Food Trading</u>, 811 F.3d at 255 (quoting <u>Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.</u>, 722 F.2d 1319, 1323 (7th Cir. 1983)). "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." <u>In re Catt</u>, 368 F.3d 789, 793 (7th Cir. 2004) (quoting <u>Stewart v. Hicks</u>, 395 N.E.2d 308, 312 (1979)).

The only allegation the plaintiff made against Young in his complaint was that Young "continued to question [the plaintiff] after [the plaintiff] demanded an attorney . . . ." Dkt. No. 1 at 4. In his prayer for relief, the plaintiff asked for $150,000 of "cumulative" damages against each defendant,[3] and $3,000,000 in punitive damages "for failure to correct and train staff. <u>Id.</u> at 5.

Because default has been established, the court must accept as true the plaintiff's allegation that Young continued to question the plaintiff after the

_____

[3] The court suspects that the plaintiff means "compensatory" damages, the kind of damages that "compensate" someone for any injury they prove they have suffered.

plaintiff demanded an attorney. But the court is not required to deem the plaintiff's allegations regarding damages as true; the plaintiff still must prove that he is entitled to the damages he seeks. Neither the plaintiff's motion for default judgment nor his motion for summary judgment prove that he suffered any damage as a result of Young's questioning, much less that he suffered $150,000 worth of damage.

The plaintiff alleges that Young continued to question him even after he asked for a lawyer. But he does not allege that he told Young anything. He does not allege that he confessed to a crime that he did not commit, or that he admitted something that damaged him. The defendants' proposed facts indicate that in response to Young's questions, the plaintiff consistently and repeatedly denied the allegations against him.

Nor does the plaintiff allege that anything he said to Young was used against him to convict him. He does not allege that the State showed the video of the interview—which the plaintiff asserts has been altered—at his jury trial, or that the State argued anything about the Young interview at the trial.

Compensatory damages "are designed to provide '*compensation* for the injury caused to plaintiff by defendant's breach of duty.'" Memphis Community School Dist. v. Stachura, 477 U.S. 299, 306 (1986) (quoting Cary v. Piphus, 435 U.S. 247, 255 (1978)). They may include "out-of-pocket loss and other monetary harms," as well as "such injuries as 'impairment of reputation . . . , personal humiliation, and mental anguish and suffering.'" Id. (quoting Gertz v. Robert Welch, Inc., 418 U.S. 33, 350 (1974)). "'[T]he basic purpose' of § 1983 damages is

'to *compensate persons for injuries* that are caused by the deprivation of constitutional rights.'" Id. (quoting Cary, 435 U.S. at 254). "[D]amages based on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of compensatory damages in such cases." Id. at 309.

The plaintiff has not alleged out-of-pocket damages resulting from Young's questioning of him after he asked for a lawyer. He has not alleged any monetary harm, or any impairment to his reputation or personal humiliation or mental anguish or suffering. Because the plaintiff has not alleged a compensable injury, he is not entitled to compensatory damages.

Even if the plaintiff had alleged mental or emotional injury from Young's action, he would not be entitled to compensatory damages. Because the plaintiff is incarcerated, the Prison Litigation Reform Act applies to his case, and under that statute, when an incarcerated plaintiff alleges mental or emotional injury, "absent an accompanying physical injury, a court may not award compensatory damages for nonphysical harm . . . ." Wright v. Miller, 561 Fed. App'x 551, 555 (7th Cir. 2014) (citing 42 U.S.C. §1997e(e)). Again, the plaintiff has not alleged a physical injury that resulted from Young's questioning of him after he asked for a lawyer.

Finally, the plaintiff is not entitled to punitive damages. To be entitled to punitive damages, the plaintiff must show "that [the defendant] was 'motivated by evil motive or intent' or acted with 'reckless or callous indifference' to [the plaintiff's] constitutional rights." Wright, 561 Fed. App'x at 555 (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). The plaintiff has not alleged that Young was

motivated by evil motive or intent, or that he acted with callous or reckless indifference.

Because the plaintiff is not entitled to compensatory or punitive damages for Young's actions, the court must deny his motion for default judgment against Young, and his motion for summary judgment against Young.

## III. THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 51)

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

13

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Conclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hosp. and Med. Cntr., 328 F.3d 890, 892-93 (7th Cir. 2003).

B.    Discussion

1.    *Johnson*

a.    *Heck v. Humphrey*

In 1994, the Supreme Court decided Heck v. Humphrey, 512 U.S. 477 (1994). The court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

Id. at 486-87. The Court explained that

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to suit.

14

Id. at 487.

It appears to the court that the plaintiff's claim against Johnson is Heck-barred. If this court were to find that Johnson entered the plaintiff's home without a warrant, or arrested him without probable cause, that finding would call into question the validity of the plaintiff's conviction. The plaintiff could have filed motions in his state court case, seeking suppression of evidence or dismissal of the charges; if he had prevailed, his case might have been dismissed. Given that, it appears to the court that the claim against Johnson is the kind of claim that is barred by Heck, and that must be raised in a petition for *habeas corpus* under 28 U.S.C. §2254.

### b. Probable Cause

Even if the plaintiff's claim against Johnson is not Heck-barred, the court finds that he has not raised sufficient genuine disputes as to issues of material fact such that the claims survives summary judgment.

The plaintiff claimed in his complaint that at 2:05 a.m. on July 26, 2012, Johnson came to his home and woke him up by knocking on his door. Dkt. No. 1 at 2. He claimed that when he answered the door, Johnson went into his home and asked whether the plaintiff was Ennis Brown. The plaintiff said that he admitted he was Ennis Brown, at which point Johnson took him into custody and took him to the jail. Id. at 1-2. As best the court can tell, the plaintiff alleges that Johnson entered his house without a warrant, and that Johnson arrested him without a warrant and without probable cause.

"At the core of the privacy protected by the Fourth Amendment is the right to be let alone in one's home." <u>Sutterfield v. City of Milwaukee</u>, 751 F.3d 542, 550 (7th Cir. 2014). There is a "presumption that warrantless entries into a home are unconstitutional," so "the government bears the burden of proving that exigent circumstances existed at the time of the entry." <u>United States v. Escobedo</u>, 397 Fed. App'x 205, 207 (7th Cir. 2010) (citing <u>Brigham City, Utah v. Stuart</u>, 547 U.S> 390, 403 (2006)).

There are disputes between the parties as to what happened on July 26, 2012. The defendants do not indicate that the officers had a warrant to enter or search the plaintiff's home; the court assumes they did not. Johnson avers that when he and his partner arrived at the residence, the plaintiff opened the door before they knocked; the plaintiff says that the officers knocked and woke him, which is what caused him to open the door. This dispute is not material; even if Johnson or his partner had knocked, the Constitution does not prohibit officers from knocking on someone's door (even in the wee, small hours of the morning). Johnson says that the plaintiff identified himself as Ennis Brown; the plaintiff says he can't recall whether he was asked his name. Again, this dispute—if it is one—is not material. Johnson then says simply that he and his partner took the plaintiff into custody "without incident." Dkt. No. 54 at ¶14. The plaintiff says that Johnson took him into custody only *after* Johnson entered his home. Dkt. No. 61 at ¶14. This dispute could be material—if a reasonable jury accepted the plaintiff's version of events and found that Johnson entered the plaintiff's home

16

before taking him into custody, the next question would be whether there were any circumstances that justified that entry.

The Supreme Court has held that "an arrest warrant alone will suffice to enter a suspect's own residence to effect his arrest." Steagald v. United States, 451 U.S. 204, 221 (1981) (citing Payton v. New York, 455 U.S. 573, 602-603 (1980)). If Johnson and his partner had an arrest warrant, they could have entered the plaintiff's home to arrest him. That would mean that even if a reasonable jury accepted the plaintiff's version of events, Johnson still would be entitled to judgment as a matter of law.

The defendants asserted in their proposed facts that the officers were aware of an "active warrant with the Palmyra Police Department." Dkt. No. 53 at ¶11. In his response to the proposed findings of fact, the plaintiff responded to this by saying, "True (P.O. Johnson said that was why he was there)." Dkt. No. 61 at ¶11. The defendants attached as an exhibit to their summary judgment materials two documents entitled "CIVIL WARRANT." Dkt. No. 56-2. Both are dated January 9, 2012, signed by municipal judge Alan Borre, and direct law enforcement to apprehend the plaintiff and bring him before the judge. Id. at 1-2. The first page indicates that the violation was "operate after suspension," id. at 1, and the second page indicates that the violation was "suspended registration," id. at 2. The third page of the exhibit is a print-out from the Jefferson County Sheriff's Department dated April 5, 2013, advising some entity or another that the plaintiff had a court date scheduled April 15, 2013 and a bail amount of $500. Id. at 3.

17

These documents are covered in hand-written notes. The first page has notes such as, "Ct case 328/2011," "Fail to pay fine," "Fine due $111.00," "4/8/13 delete fine credit time in Milw Co Jail," and "In Milw Co Jail 42 felony charges 4/15/13 Ct Appear there $500,000 bail." Id. at 1. The second page bears similar handwritten notes, but the court case number is "329/2011" and the fine due is "$85.80." Id. at 2.

Despite having stated in his response to the proposed findings of fact that it was "true" that he had an active warrant from the Palmyra Police Department at the time of his arrest, the plaintiff's response brief claims that the first page of the exhibit, the "operate after suspension" warrant, is "the copy of a copy of" the warrant. Dkt. No. 60 at 1. He argues that there "was no 'Civil warrant' for [the plaintiff] for 'driving after Suspension," that "[t]he renewal of his license made the fine 'moot' and the court had to 'dismiss' the $111.00 fine and Civil warrant as of October of 2011." Id.

Under Wisconsin state law, "a law enforcement officer may arrest a person when the law enforcement officer believes, on reasonable grounds, that a warrant for the person's arrest has been issued in [Wisconsin]." Wis. Stat. §968.07(1)(b). The plaintiff's arguments do not convince this court that there were not active warrants from the Palmyra police department as of the date of his arrest on July 26, 2012. The fact that the exhibits the defendants presented may be—likely are—copies is irrelevant. The presence of the various handwritten notes is confusing, but the context of the notes indicates that they were made *after* the warrant was issued; some even were made in April 2013, long after the plaintiff

was arrested in this case. It appears that after the plaintiff was arrested on the warrants and assessed penalties, someone made notes on the warrant documents about what those penalties were, whether they'd been paid and how to calculate or credit them. Those notes do not change the fact that as of July 26, 2012, Johnson and his partner had probable cause to believe that there were active, outstanding warrants for the plaintiff from the Palmyra Police Department.

The defendants also argue that Johnson and his partner had the "Temporary Felony Want" for the plaintiff, and they attached a copy of that document to their summary judgment materials. Dkt. No. 56-1. The document is a print-out, dated July 25, 2012 (the day before the officers arrested the plaintiff). The document indicates that the plaintiff was wanted for first-degree sexual assault. Id. at 1. It indicates that the plaintiff was a "wanted person—temporary felony," and mentioned "full extradition unless otherwise noted in the MIS field." Id. In their proposed findings of fact, the defendants describe a "Temporary Felony Want" as "an inter department warrant where probable cause exists to arrest a subject on an active investigation for a period of 72 hours." Dkt. No. 53 at ¶10; dkt. no. 54 at ¶10.

The FBI's National Crime Information Center states that a Temporary Felony Want "may be entered when a law enforcement agency has need to take prompt action to establish a 'want' entry for the apprehension of a person who has committed or the officer has reasonable grounds to believe has committed, a felony and who may seek refuge by fleeing across jurisdictional boundaries and

circumstances preclude the immediate procurement of a felony warrant."[4]

https://fas.org/irp/agency/doj/fbi/is/ncic.htm. According to this source, a Temporary Felony Want must be verified and supported by a "proper warrant within 48 hours following the entry of a temporary want." Id. The Wisconsin Court of Appeals has held that a temporary arrest "want" "is merely a tool used by officers to help apprehend a suspect that an officer has probable cause to believe committed a crime." Wisconsin v. Burrows, 385 Wis.2d 515, 2018 WL 6788157 at *5 (Ct. App. 2018). It has held that "[u]se of a temporary arrest warrant does not violate any constitutional principles provided there is probable cause to arrest the individual and it is not being used to enter into a private residence." Id. The court found only a couple of cases in the Seventh Circuit discussing temporary felony wants, and neither considered whether they could provide probable cause for an arrest. See Salazar v. Hegarty, Case No. 07-cv-328, 2009 WL 3061979 (E.D. Wis. Sept. 23, 2009); Matz v. Klotka, Case No. 08-c-494, 2012 WL 12871470 (E.D. Wis. March 8, 2012), aff'd Matz v. Klotka, 769 F.3d 517 (7th Cir. 2014).

---

[4] "NCIC is 'an electronic clearinghouse of crime data that can be tapped into by virtually every criminal justice agency nationwide, 24 hours a day, 365 days a year.' *National Crime Information Center*, FBI, http://222.fbi.gov/about-us/cjis/ncic (last visited July 14, 2014). The FBI operates NCIC in conjunction with other federal, state, local, and tribal criminal justice entities. *Id.*" Wisconsin v. Subdiaz-Osorio, 357 Wis.2d 748, 755 n.10 (Wis. 2014).

The plaintiff has not challenged the validity of the Temporary Felony Want, or argued that it did not provide probable cause for his arrest. Instead, he has argued that it did not exist—that there *was* no Temporary Felony Want out for him when Johnson appeared at his door on July 26, 2012. He points to the third page of the defendants' exhibit, dated July 26, 2012 at 4:17:13. Dkt. No. 56-1 at 3. The "TEXT" portion of that page reads, "******CANCELLATION TO TTY MWYA71 1ST DEGREE SEXUAL ASSAULT******." Id. Below that, the words "TEMP FELONY WANT CANCELLED" appear. Id. Finally, there are the words "CANCEL PER LT REINBERG@SOUTH." Id. The plaintiff indicates that this is "the July 25, 2012 'cancellation' of an inter departmental want' with the Milwaukee Police Dept." Dkt. No. 60 at 1.

The plaintiff's argument ignores the chronology reflected in the exhibit. It appears from the date in the upper right-hand corner of the first page that the Temporary Felony Want was "sent" on Wednesday, July 25 at 11:36:58 p.m. At the bottom of the page, there is an "update" by a "PA" (apparently the PA's name was Ayala Reyes) that the plaintiff was in custody, that the officer was Johnson and that the want had been canceled. Dkt. No. 56-1 at 1. The time stamp on the third page in the top right-hand corner is Thursday, July 26, 2012 at 4:18:03 a.m.—about two hours and fifteen minutes *after* the officers appeared at the plaintiff's door. Id. at 3. The documents, read together, reflect that the want was active on July 25, and that the police department canceled it on July 26 after the plaintiff was arrested.

21

The combined evidence in the record indicates that when they appeared on the plaintiff's doorstep at 2:05 a.m. on July 26, 2012, Johnson and his partner believed that there was an active warrant out for the plaintiff from the Palmyra police department and that there was an active Temporary Felony Want out for him for first-degree sexual assault. The plaintiff has presented no evidence to the contrary, other than unfounded allegations that the defendants have altered the documents to make it look as if they had probable cause. His complaint says that Johnson "entered [the plaintiff's] home." Dkt. No. 1 at 2. But the court questions whether the complaint is verified—the plaintiff swore under penalty of perjury that he gave the complaint to the prison librarian to e-file on March 29, 2017, dkt. no. 1 at 4, but did *not* swear under penalty of perjury that the allegations in the complaint were true and correct. See Beal v. Beller, 847 F.3d 897, 900 (7th Cir. 2017) (plaintiff "verified his complaint, swearing that the account it contained of the relevant events was 'accurate and true . . . subject to the penalty of perjury.'"). The court is not required to treat an *unverified* complaint as an affidavit. Id. at 901 ("[A] verified complaint is not just a pleading; it is also the equivalent of an affidavit for purposes of summary judgment, because it 'contains factual allegations that if included in an affidavit or deposition would be considered evidence, and not merely assertion"). The same is true of the plaintiff's response to the defendants' proposed findings of fact and his supplemental response—he swore under penalty of perjury that he placed them in the prison mail on certain dates, but he did not swear that his responsive facts were true and correct under penalty of perjury. Dkt. No. 61 at 3.

Even if the plaintiff had verified his complaint or his responses to the defendants' proposed statements of fact, his unsupported statements would not be sufficient to defeat the weight of the evidence presented by the defendants. The court has noted that conclusory allegations will not suffice to defeat a summary judgment motion, and the fact that those conclusory allegations are sworn does not change that fact. See Lujan v. Nat'l Wildlife Fed., 497 U.S. 871, 888 (1990) (citation omitted).

The court concludes that the plaintiff's unsupported conclusory allegations are not enough to raise a genuine dispute about whether Johnson entered his home or arrested him without probable cause.

The plaintiff also alleged in the complaint that he did not appear before a judge until "132 hours after the warrantless arrest and home entry by P.O. Johnson on July 26," and that he did not get a probable cause hearing until July 31, 2012, "over the 48 hour period and statutory time." Dkt. No. 1 at 4. The defendants state that Johnson presented a Probable Cause Statement and Judicial Determination form to Commissioner Cornwall on July 27, 2012, and that the commissioner made a probable cause finding the same day. Dkt. No. 53 at ¶¶46-47. They attached the form to their summary judgment materials. Dkt. No. 56-4. Detective Sarah Blomme signed the form on July 26, 2012 at 9:05 p.m.; it was notarized that same date. Id. at 3. Commissioner Cornwall signed it on July 27, 2012 at 2:55 p.m. Id.

In his response brief, the plaintiff says that this exhibit is not the "original" statement, and that that Johnson did not present it to the commissioner on July

27, 2012. Dkt. No. 60 at 1-2. He argues that the statement was issued "after the fact." Id. at 2.

In Gerstein v. Pugh, 420 U.S. 103 (1975), the Supreme Court held that the Fourth Amendment did not require "the full panoply of adversary safeguards—counsel, confrontation, cross-examination, and compulsory process for witnesses." Gerstein, 420 U.S. at 120. The Court concluded that the Constitution required "a timely judicial *determination* of probable cause as a prerequisite to detention," id. at 126, but concluded that that determination should be made by a process that provided "a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty," and that the determination "must be made by a judicial officer either before or promptly after arrest," id. at 124. In County of Riverside v. McLaughlin, 500 U.S. 44 (1991), the Court clarified what it meant by "prompt." The Riverside Court held that "we believe that a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirements of *Gerstein*." Id. at 56. See also, Bridewell v. Eberle, 730 F.3d 672, 676 (7th Cir. 2013) (citing Riverside).

Commissioner Cornwall's probable cause finding indicates that the plaintiff was arrested at 2:20 a.m. on July 26, 2012, dkt. no. 56-4 at 1; Commissioner Cornwall signed the determination at 2:55 p.m. on July 27, 2012, id. at 3. Thirty-six hours and 35 minutes elapsed between the time of arrest and the time of the probable cause determination. That is within Riverside's forty-eight-hour period. The plaintiff's assertion that he did not go before a judge until July 31, 2012 is

24

irrelevant; under <u>Gerstein</u>, the probable cause finding does not need to be made at a hearing. The plaintiff's assertion that the copy of the probable cause finding the defendants attached wasn't the "original" is irrelevant; he provides no proof that the version the defendants attached was tampered with or altered or falsified. The plaintiff's assertion that Commissioner Cornwall made the probable cause finding after the fact is immaterial; <u>Gerstein</u> and <u>Riverside</u> make clear that the finding can be made after the fact.

The court will grant summary judgment in favor of Johnson.

### 2.    *Armbruster and Young*

The complaint alleged that after his arrest, the plaintiff sat in the jail for six hours (unaware of any felony charges) when Armbruster took him to be questioned. Dkt. No. 1 at 4. The plaintiff said that he had not been made aware of criminal charges or been charged with a crime, and that there was no warrant to keep him in jail. <u>Id.</u> He said that after an hour and forty-five minutes, he was returned to the jail. <u>Id.</u> The defendants agree that Armbruster questioned the plaintiff on the morning of July 27, 2012, indicate that the interview took about thirty-seven minutes and state that the plaintiff denied the allegations. Dkt. No. 53 at ¶¶16-27. They indicate that Armbruster read the plaintiff his rights, which he waived, and that the plaintiff never requested an attorney during the interview. <u>Id.</u> The plaintiff disagrees about the date on which he saw Armbruster—he asserts that he did not see him on August 27, 2012. Dkt. No. 63 at ¶¶16-27. In his brief, the plaintiff argued that he was being "held" in violation of his Fourth

Amendment rights, and that Armbruster questioned him after he had "invoked" his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). Dkt. No. 60 at 3.

The court already has addressed the plaintiff's argument that he was being illegally detained at the time Armbruster questioned him. The court has concluded that the plaintiff got a probable cause determination within the required forty-eight hours; the plaintiff's detention was not illegal. Even if the detention had been illegal, the plaintiff has not demonstrated that *Armbruster* was the person who detained him.

The plaintiff's assertion that Armbruster did not interview him on July 27 is just that—an assertion. He presents no proof to contradict the defendants' facts or Armbruster's sworn affidavit (at dkt. no. 55).

The plaintiff claimed in his brief that Armbruster questioned him after he invoked his <u>Miranda</u> rights. Statements taken in violation of <u>Miranda</u> can violate a suspect's right against self-incrimination under the *Fifth Amendment*, if they are used against him in a criminal proceeding. <u>See</u> <u>Hoeft v. Anderson</u>, 409 F. App'x 15, 17 (7th Cir. 2011) (emphasis added). But the plaintiff did not make that allegation in his complaint, and the court did not allow him to proceed on a Fifth Amendment claim against Armbruster. Further, the plaintiff has not alleged that any statements Armbruster took were used against him at trial. In fact, the defendants assert that the plaintiff denied all the allegations in his interview with Armbruster. If the plaintiff did not incriminate himself to Armbruster, it is not clear how he could be damaged by Armbruster's questioning, even if the plaintiff had invoked his <u>Miranda</u> rights.

As to Young, the court already has noted that the complaint alleged only that Young continued to question the plaintiff after he asked for a lawyer. The video of Young's interview with the plaintiff contradicts the plaintiff's version of events, but even if it didn't, the court's analysis of the plaintiff's claim about Young is the same as its analysis of his claim about Armbruster. The court did not allow the plaintiff to proceed on a Fifth Amendment claim against Young. Even if the court had allowed him to proceed on such a claim, the defendants state that the defendant denied all allegations in his interview with Young, just as he had in his interview with Armbruster. The plaintiff has not alleged that any statements he made to Young were used against him at his trial. He cannot prove damages from Young's alleged questioning.

The court realizes that Young has not moved for summary judgment, because he has not made an appearance. But there is no basis for the court to allow the plaintiff to proceed against Young given the court's conclusion that no reasonable jury could find that Young violated the plaintiff's constitutional rights, or that he was harmed by any violation.

The court will grant summary judgment in favor of Johnson, Armbruster and Young.

## IV.    CONCLUSION

The court **DENIES** the plaintiff's motion for default judgment against defendant Rodney Young. Dkt. No. 39.

The court **DENIES** the plaintiff's motion for summary judgment as to defendant Rodney Young. Dkt. No. 41.

The court **GRANTS** the defendant's motion for summary judgment. Dkt. No. 51.

The court **DISMISSES** this case and will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Dated in Milwaukee, Wisconsin this 9th day of September, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**